Wesley J. Paul
PAUL LAW GROUP, LLP
902 Broadway, 6th Floor
New York, NY 10010
Tel: (646) 202-2532
Fax: (646) 514-6829
wpaul@paullawgrp.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. ROBERT M. GOLDMAN AND DR. RONALD KLATZ, | |
| Plaintiffs, | **Case Number 15-9223** |
| v. | **COMPLAINT** |
| DR. STEPHEN J. BARRETT AND QUACKWATCH, INC. | |
| Defendants. | |

Plaintiffs Dr. Robert M. Goldman and Dr. Ronald Klatz (the "**Plaintiffs**" or the "**Doctors**"), by and through their undersigned attorney, hereby file this Complaint against Defendants Stephen J. Barrett, an individual ("**Barrett**") and Quackwatch, Inc., a commercial enterprise (collectively, the "**Defendants**"), and allege as follows:

## PARTIES

1. Plaintiff ROBERT M. GOLDMAN ("**Dr. Goldman**") is currently a resident of the State of Florida and also maintains a residence in Chicago, Illinois.

2. Plaintiff RONALD KLATZ ("**Dr. Klatz**") is currently a resident of the State of Florida and also maintains a residence in Chicago, Illinois.

3. Dr. Goldman holds a Doctor of Medicine (M.D.) degree from Central America Health Sciences University, School of Medicine.  Dr. Goldman also holds an osteopathic medical degree from Midwestern University/Chicago College of Osteopathic Medicine and Surgery.

4. Dr. Goldman co-founded and served as Chairman of the Board of Life Science Holdings, a biomedical research company which has had over 150 medical patents under development in the areas of brain resuscitation, trauma and emergency medicine, organ transplant and blood preservation technologies. He has overseen cooperative research agreement development programs in conjunction with such prominent institutions as the American National Red Cross, the US National Aeronautics and Space Administration (NASA), the Department of Defense, and the FDA's Center for Devices & Radiological Health.

5. Dr. Klatz holds a Doctor of Medicine (M.D.) degree from the Central America Health Sciences University, School of Medicine. Dr. Klatz also holds a Doctor of Osteopathic Medicine and Surgery (D.O.) degree from the College of Osteopathic Medicine and Surgery in Des Moines, Iowa.

6. Dr. Klatz has served as the inventor, developer, or administrator of 100-plus scientific patents. In recognition of his pioneering medical breakthroughs, he was awarded the Gold Medal in Science for Brain Resuscitation Technology (1993) and the Grand Prize in Medicine for Brain Cooling Technology (1994). In addition, Dr. Klatz has been named as a Top 10 Medical Innovator in Biomedical Technology (1997) by the National Institute of Electromedical Information and he received the Ground Breaker Award in Health Care

(1999) with Presidential Acknowledgment by William Jefferson Clinton from Transitional Services of New York.

7. Dr. Goldman and Dr. Klatz are both currently licensed to practice medicine and surgery in the State of Illinois.

8. Dr. Goldman and Dr. Klatz have authored or co-authored dozens of books, medical textbooks, medical papers and other publications.

9. Dr. Goldman and Dr. Klatz have pioneered the use of the term "anti-aging" and have appeared in hundreds of lectures and seminars in some of the world's leading academic institutions.

10. Dr. Goldman and Dr. Klatz have founded, co-founded and/or serve in an executive or board capacity of multiple health care and fitness organizations. Dr. Goldman and Dr. Klatz co-founded the American Academy of Anti-Aging Medicine ("**A4M**"), a not-for-profit medical organization dedicated to the advancement of technology to detect, prevent, treat, and research aging related diseases.

11. A4M currently has over 26,000 physician and scientist members worldwide. A4M is generally known as the leading medical society dedicated to the advancement of technology to detect, prevent, and treat aging related disease and to promote research into methods to retard and optimize the human aging process.

12. Upon information and belief, Defendant STEPHEN JOEL BARRETT is a resident of the State of North Carolina.

13. Barrett is the owner and operator of the website www.quackwatch.org (hereinafter, the "**Website**"), www.quackwatch.com, and other affiliated websites including but not limited to www.casewatch.org and www.dentalwatch.org (the "**Affiliated Sites**").

14. Upon information and belief, Barrett is a retired psychiatrist who now operates the Website and the Affiliated Sites.

15. One stated objective of the Website is to identify certain medical practitioners for what are, in Dr. Barrett's view, questionable medical practices.

16. Upon information and belief, Defendant Quackwatch is a commercial entity formed by Barrett and his associates with the sole purpose of furthering Barrett's agenda against so-called "quackery".

17. As stated on the Website, Quackwatch is an "international network of people concerned about health-related frauds, myths, fads, fallacies, and misconduct."

18. Barrett regularly maintains the Website by adding new articles and other content. Barrett has the right to modify or update any content as he sees fit.

## JURISDICTION AND VENUE

19. This Court has Diversity of Citizenship jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy is greater than $75,000.

20. The Court has personal jurisdiction over the named Defendants, as the Defendants (a) operated and continue to operate interactive websites that are regularly accessed by the public in this District and (b) solicit and engage in business within this District.

21. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred in New York City.

## FACTUAL BACKGROUND

22. Defendants posted and made available on the Website an article dated December 6, 2000, titled "Anti-Aging 'Gurus' Pay $5,000 Penalties" ("the "**Article**"). The Article describes an Illinois medical board proceeding relating to Dr. Goldman and Dr. Klatz, and a reported settlement agreement between the Doctors and the State of Illinois

23. The Article claims that Dr. Goldman and Dr. Klatz agreed to pay $5,000 each to the State of Illinois as punishment for identifying themselves as M.D.s in Illinois without being recognized by the State.

24. On February 28, 2006 the Division of Professional Regulation of the Illinois Department of Financial and Professional Regulation determined that Dr. Goldman and Dr. Klatz are in fact "licensed physicians and surgeons of osteopathic medicine in good standing in Illinois for over 20 years, which allows them to practice and carry out all duties equivalent to what a medical doctor, an M.D., may do in Illinois."

25. According to the Website, the Article was last revised on March 6, 2001.

26. The Website indicates that the Article was last edited on March 6, 2001. The Defendants have not posted any follow-up on the Website to reflect the February 2006 Illinois decree or to clarify the statuses of Dr. Goldman and Dr. Klatz.

27. On the Website the Defendants define "quackery" as the "promotion of unsubstantiated methods that lack a scientifically plausible rationale." Barrett further states that "promotion usually involves a profit motive."

28. This definition demonstrates that Barrett has a negative presumption against the Doctors and similar medical professionals that shapes his statement of facts and his portrayals of those individuals.

29. Dr. Goldman and Dr. Klatz are successful businessmen and entrepreneurs who rely on their reputation as industry leaders in the anti-aging movement to solicit business and conduct regular business affairs.

30. In early 2014, Dr. Goldman and Dr. Klatz were contacted by several business associates who were concerned about the content of the Article and its presence and wide dissemination online.

31. Upon information and belief, Defendants engaged in active search engine optimization practices ("**SEO**") on websites such as Google and Bing in order to actively promote and help ensure the high placement of the scurrilous and misleading article in typical web searches for anyone pursuing business with Dr. Goldman and Dr. Klatz.

32. Upon information and belief, the Defendants have also utilized "meta tags" on their Website and in the Article in order to ensure that the Article appears in connection with certain defamatory inferences against the Doctors.

33. Such searches include, but are not limited to, "Goldman Klatz Violation" "Dr. Goldman and Dr. Klatz Illinois," and "Goldman Klatz Complaint".

34. There are likely many other tags or hidden text that are included in the Defendants' SEO program that have not yet been discovered and which contain inaccurate or disparaging information relating to Dr. Goldman and Dr. Klatz.

35. "Meta tags" are snippets of text that describe a page's content but do not appear on the page itself. They can be used to provide a user's website with a higher ranking on search engines and/or to describe the website. Meta tags can be apparent or they can be hidden.

36. The Defendants' improper SEO practices were not discovered by the Plaintiffs until early 2015.

37. The Plaintiffs have respectfully requested the removal of the Article from the Website, starting around 2003 and continuing to the current day.

38. Barrett originally made some modifications to the Website but the Article has remained.

39. On February 10, 2015, counsel to Dr. Goldman and Dr. Klatz sent a letter and email correspondence to Dr. Barrett stating that the Article is defamatory and damaging to the Doctors' reputation and goodwill and demanding that the Defendants remove the Article from the Website.

40. Barrett refused to comply with those demands and subsequent communications between the Doctors' counsel, Barrett, and Barrett's counsel took place between February 11 and March 14, 2015.

41. Dr. Goldman and Dr. Klatz, through counsel, made final demand that the Article be removed by March 23, 2015.

42. Barrett has refused to remove the Article and missed Plaintiffs' deadline for removal of March 23, 2015.

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

43. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 42 above.

44. Upon information and belief, metadata contained within the Article contains factual statements that tend to injure Plaintiffs in their profession because, when viewed in the context of the Defendants' Website and known practices, Plaintiffs' qualifications as medical doctors are inaccurately portrayed which also tends to injure their valuable reputations as businessmen and industry leaders.

45. The Article and the meta tags proximately caused damages to Dr. Goldman and Dr. Klatz in the form of injury to their reputations and goodwill throughout the United States and internationally as well as lost business opportunities.

46. Defendants knew that by publishing the Article it would be widely disseminated and read by the general public throughout the District, the United States and elsewhere. The Article was in fact read by members of the general public throughout the United States as a direct, natural and foreseeable consequence of publication.

47. The Defendants utilized SEO practices as well as malicious and defamatory meta tags within the Article in order to ensure the Article's wide dissemination and harmful impact on the Doctors and to expand dissemination to new audiences.

48. The use of malicious SEO practices should be considered a republication of the defamatory statements as described in *Firth v. State of New York* because these practices were intended to and actually caused the Article to be reached by new audiences.

49. These practices have resulted in new harm to the Doctors because the Article is now more accessible and more likely to appear in searches related to the Doctors.

50. As a result of the republication, the Article was read by a new audience, including individuals looking to do business with the Doctors.

51. The Article was posted with disregard for its truth, falsity or completeness and with wanton and willful disregard of the rights and reputations of Dr. Goldman and Dr. Klatz.

52. Dr. Goldman and Dr. Klatz, through counsel, have demanded that Defendants cease publication of the wrongful material and publish an appropriate retraction or clarification, but Barrett has refused or otherwise failed to do so.

53. Such actions by the Defendants were intentional, malicious and willful with the intent to injure Dr. Goldman and Dr. Klatz. Defendants are liable for damages and all reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Defamation by Implication)

54. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 53 above.

55. The Article and its presence on a website dedicated to "exposing health related frauds…and misconduct" presents a defamatory inference against Plaintiffs.

56. Any internet search involving Dr. Goldman, Dr. Klatz and/or A4M could bring back the Article as a top result and lead to an association between the Doctors and medical "quackery".

57. The Article's presence within the context of Defendants' Website, and all relevant metadata hidden within the Article as part of the SEO practices, reasonably results in the false innuendo that Dr. Goldman and Dr. Klatz are "quacks" and are not licensed medical professionals or trustworthy businessmen.

58. By knowingly and affirmatively placing the Article within the context of the Website, Defendants supplied additional affirmative evidence to suggest they clearly intended and endorsed that defamatory inference.

59. The Defendants utilized SEO practices as well as malicious and defamatory "meta tags" within the Article in order to ensure the Article's wide dissemination, harmful impact, and defamatory inferences on the Doctors.

60. The use of malicious SEO practices has resulted in new harm to the Doctors because the Article is now accessible to new audiences and more likely to appear in searches related to the Doctors, thereby creating a new defamatory implication against the Doctors.

61. The Article serves no legitimate purpose and does not provide any accurate and timely news to its audience; rather, it presents a misleading portrayal of Dr. Goldman and Dr. Klatz.

62. Such actions by the Defendants are intended to be and are, in fact, defamatory in nature, entitling Dr. Goldman and Dr. Klatz to damages and all reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage)

63. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 62 above.

64. The Defendants knew of Dr. Goldman and Dr. Klatz's numerous business enterprises and business relationships.

65. Defendants maintained the defamatory Article on the Website despite its lack of accuracy and misleading nature.

66. Defendants intentionally committed wrongful and culpable conduct by defaming Dr. Goldman and Dr. Klatz in the Article with the intent to harm the Doctors in their business enterprises.

67. The Article was accessed by prospective business clients of the Doctors and as a result, Dr. Goldman and Dr. Klatz suffered actual damages in the loss of prospective economic gain with business contacts.

68. Such actions by the Defendants are intended to be and are, in fact, tortious in nature, entitling Dr. Goldman and Dr. Klatz to damages and all reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Conspiracy to Tortiously Interfere with Prospective Business Relations)

69. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 68 above.

70. Defendants knew of Dr. Goldman and Dr. Klatz's numerous business enterprises and business relationships.

71. Defendants conspired and worked together to maintain the defamatory Article on the Website despite its lack of accuracy and misleading nature.

72. Defendants committed wrongful and culpable conduct by defaming Dr. Goldman and Dr. Klatz in the Article.

73. The Article was accessed by prospective business clients of the Doctors and as a result, Dr. Goldman and Dr. Klatz suffered actual damages in the loss of prospective economic gain with business contacts.

74. Such actions by the Defendants are intended to be and are, in fact, tortious in nature, entitling Dr. Goldman and Dr. Klatz to damages and all reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Prima Facie Tort)

75. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 74 above.

76. Defendants' sole purpose for posting and maintaining the Article was to intentionally inflict emotional and financial harm upon Dr. Goldman and Dr. Klatz.

77. The Article caused such harm and resulted in damage to the reputations of Dr. Goldman and Dr. Klatz and also resulted in the loss of business opportunities.

78. The Article is outdated, misleading, and serves no newsworthy or otherwise valid purpose.

79. Defendants' actions have resulted in the loss of not less than $10 million in potential business opportunities.

80. Such actions by the Defendant are intended to be and are, in fact, tortious in nature, entitling Dr. Goldman and Dr. Klatz to damages and all reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Civil Conspiracy)**

81. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 80 above.

82. The Defendants conspired to produce the Article and other content available on the Website.

83. As a proximate result of a malicious combination by Defendants to injure the Plaintiffs, in a way not competent for one person or entity alone, Defendants have unlawfully conspired to publish and post defamatory statements and have taken advantage of search engine optimization algorithms in order to promote the defamatory article.

84. Defendants engaged in a concerted effort to ensure that the defamatory article remained widely disseminated on the Website by utilizing SEO practices and meta tags. They further failed to provide any accurate or timely update to the Article after March 6, 2001.

85. Such actions by the Defendants are intended to be and are, in fact, tortious in nature, entitling Dr. Goldman and Dr. Klatz to damages and all reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### (NY Deceptive Business Practice)

86. Dr. Goldman and Dr. Klatz repeat and re-allege each and every allegation contained in Paragraphs 1 through 85 above.

87. Barrett is the leader of a commercial enterprise, Quackwatch, which attempts to guide and advise consumers on issues relating to the medical industry including but not limited to who is trustworthy and who is considered a "quack".

88. Defendants have used SEO procedures and meta tags to ensure that the Article will be easily accessible to consumers who are potentially interested in doing business with or gaining education from Dr. Goldman and Dr. Klatz.

89. Upon information and belief, Defendants have also attempted to edit A4M's Wikipedia page in order to disseminate inaccurate and misleading information about Dr. Goldman, Dr. Klatz, and their businesses.

90. Defendants have utilized these practices in order to mislead consumers regarding Dr. Goldman and Dr. Klatz as doctors and as businessmen.

91. Consumers could reasonably interpret these representations to mean that Dr. Goldman and Dr. Klatz are somehow inferior medical doctors and businessmen.

92. The misleading representations and practices conducted by Defendants are material to Dr. Goldman and Dr. Klatz and have resulted in significant loss of potential earnings.

93. The Defendants' Article is misleading to consumers and provides an inaccurate depiction of the statuses of Dr. Goldman and Dr. Klatz, in violation of N.Y. GBS.Law §349.

94. Dr. Goldman and Dr. Klatz suffered injury as a result of the Defendants' deceptive business practice and thus are entitled to damages and all reasonable attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF
**(Injunctive Relief)**

95. Dr. Goldman and Dr. Klatz repeat and re-allege paragraphs 1 through 94 above.

96. The situation as described herein demonstrates that Dr. Goldman and Dr. Klatz have a clearly ascertainable right in need of protection by this court. The Article has disrupted and continues to disrupt the Doctors' ability to conduct business because online search engines automatically, quickly, and easily supply links to these false, misleading, and libelous statements.

97. The situation as described herein has caused and continues to cause the Doctors irreparable harm, for every day the Article is allowed to exist on the Website, Dr. Goldman and Dr. Klatz's outstanding reputation as the industry leaders in anti-aging medicine is being further disparaged.

98. Dr. Goldman and Dr. Klatz will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill and may sustain loss of revenues, profits, and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from maintaining the Article.

99. Furthermore, Barrett has refused to comply with the Doctors' requests to remove the postings and delete all false statements of fact concerning Dr. Goldman and Dr. Klatz.

100. The severe harm the Article causes the Doctors with every passing moment it is disseminated online is much greater than any potential harm that may be caused by removing the Article.

101. WHEREFORE, Dr. Robert Goldman and Dr. Ronald Klatz, Plaintiffs, pray that this court enter an order granting them injunctive relief; and direct Defendants to remove or delete all disparaging statements and remarks pertaining to Dr. Goldman and Dr. Klatz from the Website or any websites under Defendants' control.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully demand judgment that:

A. The Plaintiffs are entitled to compensatory damages amounting to ten million dollars, including prejudgment interest, for those compensable injuries they have suffered due to the Defendant's conduct alleged herein;

B. The Plaintiffs are entitled to special damages from the loss of business as a result of Defendants' actions in the Fifth Cause of Action stated herein;

C. The Plaintiffs are entitled to attorneys' fees and costs incurred herein;

D. The Plaintiffs are entitled to injunctive relief enjoining the Defendants from engaging in defamatory, fraudulent or tortious activities against the Plaintiffs presently and in the future; and

E. The Plaintiffs are entitled to such other and further relief as may be just and proper.

Dated: November 23, 2015                                                         PAUL LAW GROUP

By: _____
      Wesley J. Paul

902 Broadway, 6th Floor
New York, New York 10010
Tel: (646) 202-2532
Fax: (646) 514-6829
Email: wpaul@paullawgrp.com

*Attorney for Plaintiffs Dr. Robert M. Goldman and Dr. Ronald Klatz*