UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

DR. ROBERT M. GOLDMAN AND DR.
RONALD KLATZ,

                    Plaintiffs,

        - against -

DR. STEPHEN J. BARRETT AND
QUACKWATCH, INC.,

                    Defendants.

15 Civ. 9223 (PGG)

**ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs Robert M. Goldman and Ronald Klatz bring this action against

Defendants Stephen J. Barrett and Quackwatch, Inc., asserting claims for defamation, tortious

interference with prospective economic advantage, prima facie tort, deceptive business practices

under New York General Business Law Section 349, and civil conspiracy.  Defendants have

moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 13)

        For the reasons stated below, Defendants' motion to dismiss will be granted.

**BACKGROUND**[1]

        Plaintiffs Goldman and Klatz each hold medical degrees from the Central

America Health Science University School of Medicine, as well as osteopathic medical degrees.

(Cmplt. (Dkt. No. 2) ¶¶ 3, 5)  Plaintiffs are licensed to practice medicine and surgery in Illinois,

and are the co-founders of the American Academy of Anti-Aging Medicine, a "not-for-profit

---

[1]  Unless otherwise noted, the following facts are drawn from the Complaint and are presumed
true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave.
Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

medical organization dedicated to the advancement of technology to detect, prevent, treat and research aging[-]related diseases." (Id. ¶¶ 7, 10)

Defendant Stephen Barrett, a retired psychiatrist, owns and operates the website www.quackwatch.org (the "Quackwatch Website") and other affiliated websites. (Id. ¶ 13) One stated objective of the Quackwatch Website is to identify medical practitioners who use what Barrett considers to be questionable medical practices. (Id. ¶ 15) Quackwatch, Inc. was formed by Barrett and others to further Barrett's agenda against practices Barrett considers to be "quackery." (Id. ¶¶ 16-17) The Quackwatch Website describes Quackwatch, Inc. as an "international network of people concerned about health-related frauds, myths, fads, fallacies, and misconduct." (Id. ¶ 17)

On or about December 6, 2000, Defendants posted an article on the Quackwatch Website entitled "Anti-Aging 'Gurus' Pay $5,000 Penalties" (the "Article"). (Id. ¶ 22) The Article describes an Illinois medical board proceeding concerning Plaintiffs, and reports on a settlement agreement between Plaintiffs and the State of Illinois. (Id.) The Article reads as follows:

> Anti-Aging "Gurus" Pay $5,000 Penalties
>
> On December 6, 2000, osteopathic physicians Ronald Klatz, D.O., and Robert Goldman, D.O., agreed to pay $5,000 each to the State of Illinois and to stop identifying themselves as M.D.s in Illinois unless authorized to do so by the Illinois Department of Professional Regulation. The agreement indicates that each acquired an "M.D." degree from the Central America Health Sciences University School of Medicine in Belize but was not licensed to use the credential in Illinois. The agreement also permits them to list the credential in their curriculum vitae as long as it does not closely follow their name.
>
> Klatz and Goldman have been associated for many years in activities related to "anti-aging medicine" and the promotion of dietary supplements. The agreements, reproduced below, were identically worded except for their names and license numbers and the final sentence of Klatz's agreement, which is not in Goldman's agreement.

2

(Article (Dkt. No. 15-6) at 1)[2]  The Article then sets forth verbatim the text of the consent orders

entered into between Plaintiffs and the State of Illinois Department of Professional Regulation.

(Id. at 1-2)[3]  The Quackwatch Website indicates that the Article was last revised on March 6,

2001. (Cmplt. (Dkt. No. 2) ¶¶ 25-26)

On February 28, 2006, the Division of Professional Regulation of the Illinois

Department of Financial and Professional Regulation determined that Plaintiffs have been

"licensed physicians and surgeons of osteopathic medicine in good standing in Illinois for over

---

[2] In ruling on Defendants' motion, this Court may consider – in addition to the Complaint—
"those documents attached to the pleadings as an exhibit or any statements or documents
incorporated in the Complaint by reference, and . . . any documents that are integral to the
Complaint or an appropriate subject for judicial notice." D'Antonio v. Metro. Transp. Auth., No.
06 Civ. 4283(KMW), 2008 WL 582354, at *3 n.6 (S.D.N.Y. Mar. 4, 2008) (citing Global
Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154-56 (2d Cir. 2006)); see also
Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ( "Even where a document
is not incorporated by reference, the court may nevertheless consider it where the complaint
'relies heavily upon its terms and effect,' which renders the document 'integral' to the
complaint.") (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d
Cir. 1995) (per curiam)).

In ruling on Defendants' motion to dismiss, this Court has considered the Article – which has
been submitted by Defendants – because it is cited by Plaintiffs and is integral to the Complaint.
See Murawski v. Pataki, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007) ("In support of his motion to
dismiss plaintiff's claim of defamation, [defendant] has submitted a copy of the website page
containing the allegedly defamatory statement. . . . [T]he Court will [consider this evidence]
because plaintiff relies on the [allegedly defamatory] statement in his Complaint and the
statement is integral to plaintiff's action." (citing Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47-48 (2d Cir. 1991); Kreiss v. McCown DeLeeuw & Co., 37 F. Supp. 2d 294, 298 n.3
(S.D.N.Y. 1999); Knievel v. ESPN, Inc., 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002))); Condit v.
Dunne, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004) (considering on a motion to dismiss audio
recordings and transcripts of television shows that "are the records of the allegedly slanderous
statements made by defendant," because these materials "aid the Court in its determination of
whether plaintiff states a claim for relief"). Other documents submitted by the parties (see Dkt.
No. 15, Ex. B-E, Ex. G-K; Dkt. No. 16, Ex. A; Dkt. No. 17, Ex. A-B) have not been considered
by this Court, because they are not attached to, incorporated by reference in, or integral to the
Complaint.

[3] The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

20 years, which allows them to practice and carry out all duties equivalent to what a medical doctor, an M.D., may do in Illinois." (Id. ¶ 24) No content was posted on the Quackwatch Website to reflect the February 2006 Division of Professional Regulation determination. (Id. ¶ 26)

In early 2014, Plaintiffs were contacted by several business associates who were concerned about the content of the Article and its presence and dissemination online. (Id. ¶ 30)

In early 2015, Plaintiffs discovered that Defendants had employed search engine optimization ("SEO") techniques on websites such as Google and Bing in order to ensure that the Article would appear high up on the list of internet search results when anyone conducted an online search related to Plaintiffs. (Id. ¶ 31) Defendants also used "meta tags"[4] – "snippets of text that describe a [web]page's content but do not appear on the [web]page itself" – on the Quackwatch Website and in the Article to ensure that the Article would be listed as a search result when anyone conducted searches related to Plaintiffs, including searches using the terms "Goldman Klatz violation," "Dr. Goldman and Dr. Klatz Illinois," and "Goldman Klatz Complaint." (Id. ¶¶ 32-35)

Plaintiffs have asked Defendants to remove the Article from the Quackwatch Website, but Defendants have not done so. (Id. ¶¶ 37-42)

---

[4] "A metatag is hypertext markup language ('HTML') code, invisible to the Internet user, that permits web designers to describe their webpage." Bihari v. Gross, 119 F. Supp. 2d 309, 320 n.3 (S.D.N.Y. 2000). "There are two different types of metatags": "[k]eyword metatags," which "permit[] designers to identify search terms for use by search engines" and "[d]escription metatags," which "allow designers to briefly describe the contents of their pages" in a "description [that] appears as sentence fragments beneath the webpage's listing in a search result." Id.

4

## DISCUSSION

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

## II. DEFAMATION CLAIMS

The Complaint includes claims for defamation per se and defamation by implication. (Cmplt. (Dkt. No. 2) ¶¶ 43-62) These claims are premised on the Article as posted on the Quackwatch Website. (Id.) Defendants argue that Plaintiffs' defamation claims must be dismissed, because Plaintiffs "have failed to identify anything that is untrue about the challenged article." (Def. Br. (Dkt. No. 14) at 17)

"To state a claim for defamation under New York Law, [a] plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that

5

either constitutes defamation per se or caused 'special damages.'"[5] Gargiulo v. Forster & Garbus

Esqs., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing Dillon v. City of New York, 261 A.D.2d

34, 38 (1st. Dept. 1999)).

          As an initial matter, the Complaint does not allege that any statement made in the

Article constitutes a false statement of fact. "A statement may significantly harm a plaintiff's

reputation, but if it is not alleged to be a false statement of fact, it is not actionable as

defamation." Biro v. Conde Nast, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012). Ordinarily, where

a defamation claim – as here – does not allege a false statement, the claim must be dismissed.

See Parrino v. SunGard Availability Servs. LP, No. CV 11-3315(JFB)(GRB), 2013 WL

1120825, at *3 (E.D.N.Y. Feb. 27, 2013), report and recommendation adopted sub nom. Parrino

v. SunGard Availability Servs., No. 11-CV-3315(JFB)(GRB), 2013 WL 1104784 (E.D.N.Y.

Mar. 18, 2013) (dismissing defamation claim where "plaintiff has not identified alleged false

statements"); Gargiulo, 651 F. Supp. 2d at 192 (dismissing defamation claim where plaintiff

"fails to identify a false statement about him"); see also Hohmann v. GTECH Corp., 910 F. Supp.

2d 400, 408 (D. Conn. 2012) (dismissing defamation claim where the complaint "does not allege

that [defendants] made a false statement").

          In the Complaint, however, Plaintiffs allege that "[t]he Article and its presence on

---

[5] Plaintiffs Klatz and Goldman maintain residences in Florida and Illinois. (Cmplt. (Dkt. No. 2)
¶¶ 1-2) Defendant Barrett is a resident of North Carolina. (Id. ¶ 12) Both sides rely on New
York law, however. (See, e.g., Pltf. Br (Dkt. No. 17) at 10 (discussing the legal standards for
defamation claims "[u]nder New York law"); Def. Br. (Dkt. No. 14) at 16-17 (same))
Accordingly, this Court relies on New York law in ruling on Defendants' motion to dismiss. See
DeBlasio v. Merrill Lynch & Co., No. 07 Civ. 318(RJS), 2009 WL 2242605, at *19 n.14
(S.D.N.Y. July 27, 2009) ("[w]here '[t]he parties' briefs assume that New York law controls, . . .
such "implied consent . . . is sufficient to establish choice of law.""" (second alteration in
DeBlasio) (quoting Nat'l Utility Serv., Inc. v. Tiffany & Co., No. 07 Civ. 3345(RJS), 2009 WL
755292, at *6 n.6 (S.D.N.Y. Mar. 20, 2009) (citation omitted))).

[the Quackwatch Website] [ – which is] dedicated to 'exposing health[-]related frauds . . . and misconduct' [– ] presents a defamatory inference against Plaintiffs" and "reasonably results in the false innuendo that [Plaintiffs] are 'quacks.'" (Cmplt. (Dkt. No. 2) ¶¶ 55, 57)

"'Defamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements.'" Tannerite Sports, LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (quoting Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 381 (1995)). In order for a claim of defamation by implication "'[t]o survive a motion to dismiss[,] . . . the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference.'" Id. (quoting Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 38 (1st Dept. 2014)); see Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 249 (S.D.N.Y.), aff'd, 578 F. App'x 24 (2d Cir. 2014) (noting on a motion to dismiss that New York courts "require an 'especially rigorous showing'" for defamation by implication claims (quoting Biro, 883 F. Supp. 2d at 466)).

Plaintiffs argue that the Article constitutes defamation by implication because – in the context of the Quackwatch Website – it (1) implies that Plaintiffs are "quacks" (Pltf. Br. (Dkt. No. 17) at 10, 13); and (2) implies that Plaintiffs are involved in "something akin to health fraud."[6]  (Id.)

---

[6] Plaintiffs also contend that the placement of the Article on the Quackwatch website implies that Plaintiffs are "inferior medical practitioners." (Pltf. Br. (Dkt. No. 17) at 13) Defendants argue that any such implication constitutes protected opinion. (Def. Br. (Dkt. No. 14) at 15; Def. Reply Br. (Dkt. No. 16) at 10-11)

"Statements of opinion . . . are not proper subjects of a defamation action; instead, they receive 'absolute protection' under the New York Constitution." Egiazaryan v. Zalmayev, 880 F. Supp.

As to Plaintiffs' argument that the presence of the Article on the Quackwatch

Website implies that Plaintiffs are "quacks," the term "quack" is defined as "a person who falsely

pretends to have medical skills or knowledge." CAMBRIDGE DICTIONARY,

http://dictionary.cambridge.org/us/dictionary/english/quack (last visited Aug. 18, 2016); see

OXFORD DICTIONARY, http://www.oxforddictionaries.com/definition/english/quack (last visited

Aug. 18, 2016) (defining "quack" as "[a] person who dishonestly claims to have special

---

2d 494, 503 (S.D.N.Y. 2012) (quoting Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 178 (2d Cir. 2000)). "Whether a particular statement expresses fact or opinion is a question that the court must decide as a matter of law." Id. (citing Printers II, Inc. v. Professionals Publ'g, Inc., 784 F.2d 141, 146 (2d Cir. 1986)). To determine whether a statement is one of fact or opinion, New York courts consider

"(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact."

Biro, 883 F. Supp. 2d at 460 (quoting Brian v. Richardson, 87 N.Y.2d 46, 51 (1995)).

Analysis of these factors here indicates that any implication that Plaintiffs are "inferior medical practitioners" is a non-actionable statement of opinion; it is merely "an expression of one's view of another." Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014); see Vinas v. Chubb Corp., 499 F. Supp. 2d 427, 436-37 (S.D.N.Y. 2007) (statement that a company is "no good" is "subjective, cannot be proven 'true' or 'false,' and [is] thus [a] non-actionable statement[] of opinion").

Moreover, to the extent Plaintiffs argue that a reader would infer that Defendants are basing their opinion on undisclosed facts (Pltf. Br. (Dkt. No. 17) at 10-11), that argument is not persuasive. The Article explicitly sets forth the basis for any opinion: Plaintiffs agreed to pay a penalty of $5,000 each for identifying themselves as M.D.s without being authorized to do so by the State of Illinois. (Article (Dkt. No. 15-6)) Accordingly, Plaintiffs' defamation claims cannot survive on a theory that the Article suggests that Defendants are relying on undisclosed facts in expressing their opinion. See Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997) ("if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable" (citing Gross v. N.Y. Times Co., 82 N.Y.2d 146, 154 (1993))); Vinas, 499 F. Supp. 2d at 436 (finding, on a motion to dismiss, that statements of opinion were not actionable where "it is unclear what facts, exactly" defendants "would have known to support their assertion[s] . . . that [the] audience . . . did not know itself").

knowledge and skill in some field, typically medicine"); WEBSTER'S II NEW COLLEGE DICTIONARY (defining "quack" as "one who pretends to have medical expertise").

Here, it is undisputed that Plaintiffs entered into consent orders that required them to make a payment of $5,000 to the State of Illinois in connection with having previously identified themselves as M.D.s. (See Cmplt. (Dkt. No. 2) ¶ 23; Article (Dkt. No. 15-6) at 1-2) Each Plaintiff also agreed to "immediately Cease and Desist from identifying himself, in the State of Illinois, as an M.D." (Article (Dkt. No. 15-6) at 2) Each Plaintiff further agreed that any violation of the consent orders "shall be grounds for the Department [of Professional Regulation] to immediately file a Complaint to revoke [Plaintiff's] license to practice as a Physician and Surgeon in the State of Illinois." (Id.)

Given Plaintiffs' obligation under New York law to make a "'rigorous showing that the language of the communication as a whole can be reasonably read . . . to impart a defamatory inference,'" Tannerite Sports, LLC, 135 F. Supp. 3d at 232 (quoting Stepanov, 120 A.D.3d at 38); see Kavanagh, 997 F. Supp. 2d at 249, Plaintiffs' defamation by implication claims cannot survive. To the extent that the placement of the Article on the Quackwatch Website implies that Plaintiffs "falsely pretend[ed] to have medical skills or knowledge," Plaintiffs have not pled facts sufficient to demonstrate that such an implication is false. Plaintiffs' settlements with the State of Illinois bar them from continuing to identify themselves as having M.D. degrees.

A claim for defamation by implication must be based on a "'misleading omission[] or false suggestion[].'" Krepps v. Reiner, 588 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (quoting Oluwo v. Hallum, 851 N.Y.S.2d 59 (2007)); see Emamian v. Rockefeller Univ., No. 07 CIV. 3919(DAB), 2008 WL 4443824, at *6 (S.D.N.Y. Sept. 25, 2008) (stating that defamation by

9

implication "involves 'false suggestions, impressions and implications'" (quoting Levin, 119 F.3d at 196 n.5)).  Under the circumstances of this case, and acknowledging the placement of the Article on the Quackwatch Website, Plaintiffs have not made the requisite "rigorous showing" that the Article constitutes a false suggestion or reflects a misleading omission.  Accordingly, they have not made out a plausible claim for defamation by implication.  See Martin v. Hearst Corp., 777 F.3d 546, 553 (2d Cir.), cert. denied, 136 S. Ct. 40 (2015) (finding that defamation by implication claim was not actionable where "the [statements] at issue in [the] case . . . do not imply any fact about [plaintiff] that is not true.").

Plaintiffs also contend that because the Article is posted on the Quackwatch Website, there is an implication that Plaintiffs are involved in "something akin to health fraud." (Pltf. Br. (Dkt. No. 17) at 10, 13)  "'Though courts have cautioned against straining to interpret . . . writings in their mildest and most inoffensive sense to hold them [non-defamatory], it is equally clear that courts should not strain to interpret statements as defamatory.'"  Krepps, 588 F. Supp. 2d at 484 (quoting Pavlica v. Behr, No. 04 Civ. 8152(DC), 2006 WL 1596763, at *7 (S.D.N.Y. June 12, 2006)); see Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 518 (S.D.N.Y. 2013) ("a court should not 'render statements actionable by giving them a strained or artificial construction.'" (quoting Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006) (internal quotation marks and citations omitted))).

Fairly read, the Article does not suggest that Plaintiffs are engaged in health care fraud.  Instead, the Article accurately reports that Plaintiffs each paid a penalty of $5,000 for identifying themselves as M.D.s without proper authorization from the Illinois Department of Professional Regulation.  The Article does not state or imply that Plaintiffs have committed "something akin to health fraud" (Pltf Br. (Dkt. No. 17) at 10, 13), whether in connection with

10

"anti-aging medicine" or the promotion of dietary supplements, or in some other way. This

Court will not give the Article a "'strained or artificial construction'" in order to find such a

defamatory implication. Lan Sang, 951 F. Supp. 2d at 518 (quoting Qureshi, 430 F. Supp. 2d at

287). Accordingly, Plaintiffs' defamation claims will be dismissed.[7] See Krepps, 588 F. Supp.

2d at 484 (granting motion to dismiss defamation claims where the court could not find alleged

defamatory implication without giving the statements at issue "'a strained or artificial

---

[7] Plaintiffs also complain that "Defendants have not posted any follow-up on the [Quackwatch] Website to reflect the February 2006 Illinois decree. . . ." (Cmplt. (Dkt. No. 2) ¶ 26) As discussed above, in February 2006, the Illinois Department of Professional Regulation determined that Plaintiffs' status as doctors of osteopathic medicine permitted them to perform all the duties of an M.D. (Cmplt. (Dkt. No. 2) ¶ 24)

The Illinois Department of Professional Regulation's determination in 2006 that Plaintiffs could perform functions "equivalent" to M.D.s does not in any way change the undisputed fact that – in 2000 – Plaintiffs paid $5,000 to the State of Illinois for identifying themselves "as M.D.s" without being authorized to do so. (See Cmplt. (Dkt. No. 2) ¶¶ 23, 24) Moreover, Defendants' failure to update the Article does not make what was previously non-defamatory now defamatory. Martin v. Hearst Corp., 777 F.3d 546 (2d Cir. 2016) is instructive on this point.

In Martin, defendants issued a news report stating that plaintiff had been arrested and criminally charged, but did not update the story to indicate that the charges against Martin were later dismissed. Martin, 777 F.3d at 552. The Second Circuit ruled that the statements about Martin's arrest were not defamatory because, even though the story had not been updated, the statements about plaintiff's arrest "d[id] not imply any fact about [plaintiff] that is not true. . . . Reporting Martin's arrest without an update may not be as complete a story as Martin would like, but it implies nothing false about her." Id. Similarly here, the Article is not defamatory merely because "[r]eporting [the $5,000 settlements] without an update may not be as complete a story as [Plaintiffs] would like." Id.

Finally, Plaintiffs' opposition brief does not address Defendants' arguments (see Def. Br. (Dkt. No. 14) at 16) concerning Plaintiffs' "failure to update" theory of liability. Having failed to respond to Defendant's arguments, Plaintiff has abandoned any defamation claim premised on a "failure to update" theory, and any such claim will be dismissed. See, e.g., Voiceone Commc'ns, LLC v. Google Inc., No. 12 CIV. 9433(PGG), 2014 WL 10936546, at *1 n.2 (S.D.N.Y. Mar. 31, 2014) (where "Plaintiff has not addressed in any fashion [defendant's] arguments," plaintiff's "claims have been abandoned and will be dismissed" (citing In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529(JMF), 2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013))).

construction'" (quoting Pavlica, 2006 WL 1596763, at *7)); see also Kavanagh, 997 F. Supp. 2d

at 255 ("conclud[ing] as a matter of law that [the statement at issue] is not defamatory by

implication" where the statement at issue does not support "[p]laintiff's claim of innuendo").

## III.    TORTIOUS INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE CLAIMS

Plaintiffs assert claims for tortious interference with prospective economic

advantage, and conspiracy to tortiously interfere with prospective economic advantage.  (Cmplt.

(Dkt. No. 2) ¶¶ 63-74)  Defendants argue that these claims must be dismissed as duplicative of

Plaintiffs' defamation claims.  (Def. Br. (Dkt. No. 14) at 17)

Claims for tortious interference with prospective economic advantage are

dismissed as duplicative of defamation claims where such claims are premised on the same

"'factual allegations . . . [as] the facts underlying [a] defamation claim.'"  Restis v. Am. Coal.

Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014) (citing Hengjun Chao v.

Mount Sinai Hosp., 476 F. App'x 892 (2d Cir. 2012)); Pusey v. Bank of Am., N.A., No. 14-CV-

04979 FB LB, 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015) ("[Defendant] contends that

[Plaintiff's] . . . tortious interference with prospective business relations claims . . . should be

dismissed [as] duplicative of her defamation claim. The Court agrees"); see also Krepps, 588 F.

Supp. 2d at 485 ("Plaintiff is not permitted to dress up a defamation claim as a claim for

intentional interference with a prospective economic advantage." (citing Pasqualini v.

MortgageIT, Inc., 498 F. Supp. 2d 659, 669-70 (S.D.N.Y. 2007))).

Plaintiffs argue, however, that their tortious interference claims allege an

economic injury that goes beyond the reputational harm that forms the basis of their defamation

claims.  (Pltf. Br. (Dkt. No. 17) at 14)  Where the economic damages asserted by plaintiffs as

part of a tortious interference claim "flow[] from the effect of the defamatory comments on

12

Plaintiffs' reputation," however, the tortious interference claim will be dismissed as duplicative of a defamation claim. Restis, 53 F. Supp. 3d at 726. Here, Plaintiffs allege that "[t]he Article was accessed by prospective business clients of the [Plaintiffs] and as a result, [Plaintiffs] suffered actual damage in the loss of prospective economic gain with business contacts." (Cmplt. (Dkt. No. 2) ¶¶ 67, 73) Because the "entire injury pleaded in relation to the tortious interference with prospective economic advantage cause[s] of action flow[] from the effect of the defamatory [Article] on Plaintiffs' reputation," Restis, 53 F. Supp. 3d at 726, Plaintiffs' causes of action for tortious interference must be dismissed as duplicative of Plaintiffs' defamation claims.

## IV. PRIMA FACIE TORT CLAIM

The Complaint also pleads a claim for prima facie tort. In this cause of action, Plaintiffs allege that "[t]he Article caused [emotional and financial] harm [to Plaintiffs] and resulted in damage to the reputations of [Plaintiffs] and also resulted in the loss of business opportunities." (Cmplt. (Dkt. No. 2) ¶¶ 76-77) Defendants argue that Plaintiffs' claim for prima facie tort must be dismissed as duplicative of their defamation claims. (Def. Br. (Dkt. No. 14) at 17)

"'[I]t is well-settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort – even if the traditional tort claims turn out not to be viable.'" Friends of Falun Gong v. Pac. Cultural Enter., Inc., 288 F. Supp. 2d 273, 284-85 (E.D.N.Y. 2003), aff'd sub nom. Friends of Gong v. Pac. Culture, 109 F. App'x 442 (2d Cir. 2004) (quoting Nevin v. Citibank, 107 F. Supp. 2d 333, 346–47 (S.D.N.Y. 2000)). "This principle has been applied in the defamation context." Id. (citing Nat'l Nutritional Foods Ass'n v. Whelan, 492 F. Supp. 374, 383 (S.D.N.Y. 1980)). Accordingly, "'[w]here the factual allegations underlying the prima facie tort cause of action relate to the dissemination of allegedly

13

defamatory materials, that cause of action must fail.'" Chao v. Mount Sinai Hosp., No. 10 CV 2869(HB), 2010 WL 5222118, at \*14 (S.D.N.Y. Dec. 17, 2010), aff'd sub nom. Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892 (2d Cir. 2012) (quoting McKenzie v. Dow Jones & Co., 355 F. App'x 533, 536 (2d Cir. 2009)).

Here, Plaintiffs' cause of action for prima facie tort is based on Defendants' "posting and maintaining the [allegedly defamatory] Article" on the Quackwatch Website. (Cmplt. (Dkt. No. 2) ¶ 76)  Plaintiffs do not allege any conduct beyond the dissemination of the Article.  Accordingly – as with Plaintiffs' tortious interference claims – any economic harm suffered by Plaintiffs stems entirely from the effect of the allegedly defamatory statements on their reputations.  Because Plaintiffs' prima facie tort "claim relates only to [the] defamatory [Article,] [it] must fail."  Chao, 2010 WL 5222118, at \*14; see Restis, 53 F. Supp. 3d at 730 ("the factual allegations underlying the prima facie [tort] cause of action relate to the dissemination of allegedly defamatory materials; accordingly this cause of action must fail"); Arias-Zeballos v. Tan, No. 06 CIV. 1268 (GEL), 2006 WL 3075528, at \*13 (S.D.N.Y. Oct. 26, 2006) ("to the extent [plaintiff] seeks relief for the alleged defamatory statements, she must rely on her defamation cause of action rather than pleading a duplicative claim for prima facie tort based on the very same statements"); Friends of Falun Gong, 288 F. Supp. 2d at 285 ("Because the only specific acts alleged by the plaintiffs are the exact same facts that failed as a defamation claim, plaintiffs' prima facie tort claim is dismissed.").

## V.     N.Y. GENERAL BUSINESS LAW § 349 CLAIM

Plaintiffs plead a cause of action for deceptive business practices under New York General Business Law § 349, alleging that "[t]he Defendants' Article is misleading to

14

consumers." (Cmplt. (Dkt. No. 2) ¶ 93) Defendants argue that this claim must be dismissed because, inter alia, the Article is not materially misleading. (Def. Br. (Dkt. No. 14) at 18)

N.Y. Gen. Bus. Law § 349 makes it unlawful to use "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York State]." N.Y. Gen. Bus. Law § 349(a). To state a claim under Section 349, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Catalano v. BMW of N. Am., LLC, No. 15-CV-4889 (KBF), 2016 WL 844832, at *15 (S.D.N.Y. Mar. 1, 2016) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)). "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995)); see Catalano, 2016 WL 844832, at *15 ("To constitute a misleading or deceptive act under the statute, the defendant's act 'must be likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting Orlander, 802 F.3d at 300)).

Here, as discussed above, the Article would not be "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Cohen, 498 F.3d at 126 (quoting Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26). Plaintiffs have not identified any statement in the Article that is false. Moreover, Plaintiffs have not demonstrated that the Article – when read by a reasonable consumer – would give rise to a false implication. Accordingly, Plaintiffs have not pled facts sufficient to make out the "materially misleading"

15

element of a N.Y. Gen. Bus. Law § 349 claim, and this claim will be dismissed.[8]  See Dimond v.

Darden Restaurants, Inc., No. 13 CIV. 5244(KPF), 2014 WL 3377105, at *10 (S.D.N.Y. July 9,

2014) (dismissing N.Y. Gen. Bus. Law § 349 claim where plaintiff "failed to plead adequately

the element[] of 'materially misleading' conduct"); Derbaremdiker v. Applebee's Int'l, Inc., No.

12-CV-01058 (KAM), 2012 WL 4482057, at *6 (E.D.N.Y. Sept. 26, 2012), aff'd, 519 F. App'x

77 (2d Cir. 2013) (same).

## VI.    CIVIL CONSPIRACY CLAIM

The Complaint asserts a claim for civil conspiracy, alleging that "[t]he Defendants

conspired to produce the Article and other content available on the [Quackwatch] Website."

(Cmplt. (Dkt. No. 2) ¶ 82)

"It is well settled under New York law that there is no substantive tort of

conspiracy." Antonios A. Alevizopoulos & Associates, Inc. v. Comcast Int'l Holdings, Inc., 100

F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (citing Goldstein v. Siegel, 19 A.D.2d 489 (1st Dept.

1963)). "In order to state a claim for conspiracy, therefore, there must be allegations of an

---

[8]  Plaintiffs also allege – as part of their claim under N.Y. Gen. Bus. Law § 349 – that "[u]pon
information and belief, Defendants have also attempted to edit A4M's Wikipedia page in order to
disseminate inaccurate and misleading information about [Plaintiffs] and their businesses."
(Cmplt. (Dkt. No. 2) ¶ 89)  A4M, or the American Academy of Anti-Aging Medicine, is a not-
for-profit medical organization founded by Plaintiffs that is "dedicated to the advancement of
technology to detect, prevent, treat and research aging[-]related diseases."  (Id. ¶ 10)
Plaintiffs merely allege, however, that Defendants "attempted to" edit the Wikipedia page for
Plaintiffs' organization; Plaintiffs do not allege that Defendants actually made any such edits.
Accordingly, to the extent that Plaintiffs' N.Y. Gen. Bus. Law § 349 claim is premised on
Defendants' alleged attempt to edit the Wikipedia page, Plaintiffs' claim fails, because Plaintiffs
have not pled that they "'suffered injury as a result of th[is] allegedly deceptive act or practice.'"
Catalano, 2016 WL 844832, at *15 (quoting Orlander, 802 F.3d at 300); see Dimond, 2014 WL
3377105, at *9 (dismissing N.Y. Gen. Bus. Law § 349 claim where "[e]ven assuming Plaintiff
adequately pleaded that the alleged deceptive conduct was materially misleading, he has failed to
plead the requisite injury, and thus cannot survive a motion to dismiss"); Derbaremdiker, 2012
WL 4482057, at *7 ("[a]s plaintiff fails to allege facts sufficient to satisfy . . . the . . . actual
injury requirement[] of a Section 349 claim, this claim must be dismissed").

16

independent actionable tort." Id. (citing Guthartz v. City of New York, 84 A.D.2d 707 (1st Dept. 1981)); see Amadsau v. Bronx Lebanon Hosp. Ctr., No. 03 CIV.6450 LAK AJP, 2005 WL 121746, at *10 (S.D.N.Y. Jan. 21, 2005), report and recommendation adopted sub nom. Amadasu v. Rosenberg, No. 03CIV.6450LAK, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), aff'd, 225 F. App'x 32 (2d Cir. 2007) ("Only if an actionable underlying tort is established may a plaintiff plead the existence of a conspiracy." (citing Treppel v. Biovail Corp., 03 Civ. 3002, 2004 WL 2339759 at *8 (S.D.N.Y. Oct. 15, 2004); Endovasc Ltd. v. J.P. Turner & Co., 02 Civ. 7313, 2004 WL 634171 at *14 (S.D.N.Y. Mar. 30, 2004); Kraft v. Rector, 01 Civ. 7871, 2004 WL 540327 at *3 n.5 (S.D.N.Y. Mar. 17, 2004))).

Because this Court has determined that all of Plaintiffs' underlying claims must be dismissed, Plaintiffs' civil conspiracy claim will likewise be dismissed. See Amadsau, 2005 WL 121746, at *10 ("Because none of [plaintiff's] possible underlying claims . . . survive, the conspiracy claim should be dismissed"); Treppel v. Biovail Corp., No. 03CIV3002PKL, 2005 WL 427538, at *6 (S.D.N.Y. Feb. 22, 2005) (finding that a civil conspiracy claim must "fail[] as well because . . . there is no independent tort upon which to base a conspiracy").

## VII.   STATUTE OF LIMITATIONS

Defendants also argue that Plaintiffs' claims are barred by the statute of limitations. (Def. Br. (Dkt. No. 14) at 9)

"'Federal courts sitting in diversity are required to follow the statute of limitations rules of the forum state, in this case New York.'" Altaire Pharm., Inc. v. Rose Stone Enterprises, No. 13-CV-4373(JFB)(WDW), 2013 WL 6235862, at *6 (E.D.N.Y. Dec. 3, 2013) (quoting Old Country Toyota Corp. v. Toyota Motor Distribs., Inc., 966 F. Supp. 167, 168 (E.D.N.Y. 1997)). "A claim for defamation [in New York] is subject to a one year statute of limitations. . . ." Lader

17

v. Delgado, 941 F. Supp. 2d 267, 272 (E.D.N.Y. 2013) (citing Liverpool v. Con-Way, Inc., No.
08-CV-4076 JG, 2010 WL 4791697, at \*4 (E.D.N.Y. Nov. 18, 2010)).  Moreover – because
"under New York law, the essence of the claim[,] rather than its name[,] dictates the applicable
statute of limitations," Guelen v. Distinctive Pers., Inc., No. 11-CV-01204(JG)(SMG), 2011 WL
3420852, at \*4 (E.D.N.Y. Aug. 4, 2011) (citing Morrison v. Nat'l Broad. Co., 19 N.Y.2d 453, 459
(1943)) – the one year statute of limitations for defamation applies to other causes of action that
are "in essence . . . claim[s] for defamation."  Id.; see Torres v. CBS News, 879 F. Supp. 309, 316
(S.D.N.Y.), aff'd sub nom. Torres v. Schumer, 71 F.3d 406 (2d Cir. 1995) (where plaintiff's
"claims . . . all involve the same allegedly false and defamatory statements . . . regardless of the
terms in which [the] cause[s] of action may be cast, the one-year limitations period for libel and
slander applies").

      "New York adheres to a single publication rule in determining when the statute of
limitations begins to run on a defamation claim."  Van Buskirk v. The New York Times Co., 325
F.3d 87, 89 (2d Cir. 2003) (citing Gregoire v. G.P. Putnam's Sons, 298 N.Y. 119, 125 (1948)).
Moreover, the single publication rule applies to material disseminated over the Internet.  Id. at 90
(citing Firth v. State, 98 N.Y.2d 365, 369 (2002)).  Under the single publication rule, "'[a] cause
of action for defamation accrues when the material is published,'" and "'it is irrelevant, for
statute of limitation purposes, that a story remains online after its publication.'"  Biro, 963 F.
Supp. 2d at 266-67 (quoting Shamley v. ITT Corp., 869 F.2d 167, 172 (2d Cir. 1989) and Young
v. Suffolk Cnty., 705 F. Supp. 2d 183, 212 (E.D.N.Y. 2010)).

      Here, the essence of all of Plaintiffs' causes of action is defamation.  Accordingly,
New York's one-year statute of limitations for defamation applies.  Given that (1) the Article was
published on the Quackwatch Website no later than 2001 (see Cmplt. (Dkt. No. 2) ¶¶ 25-26

("[a]ccording to the [Quackwatch] Website, the Article was last revised on March 6, 2001")), and

(2) the Complaint was filed on November 24, 2015 (see Dkt. No. 2), Plaintiffs' claims are time-

barred.

Plaintiffs argue, however, that "[b]ecause the Article has been effectively

republished on Defendants' [Quackwatch] Website, . . . [Plaintiffs'] cause[s] of action ha[ve]

been brought within the one year statute of limitations." (Pltf. Br. (Dkt. No. 17) at 7)

"Courts have held that, notwithstanding the single publication rule, the

publication of a work may constitute a 'republication' – giving rise to a new cause of action and

re-starting the statute of limitations – in circumstances where the new publication arises from a

conscious act that is undertaken in order to reach a new audience." Etheredge-Brown v. Am.

Media, Inc., 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014) (citing Rinaldi v. Viking Penguin, Inc., 422

N.Y.S.2d 552 (1979), aff'd, 52 N.Y.2d 422 (1981); Cusano v. Klein, 264 F.3d 936, 949 (9th Cir.

2001)); see Ferber v. Citicorp Mortgage, Inc., No. 94 CIV. 3038 (AGS), 1996 WL 46874, at *4

(S.D.N.Y. Feb. 6, 1996) ("One exception to the single publication rule is that if a writing is later

reissued or republished, the statute of limitations with respect to that reissue or republication

commences to run anew." (citing Rinaldi, 73 A.D.2d at 45)).

"Republication occurs when a subsequent publication:  (1) is intended for and

reaches a new audience, or (2) materially changes or modifies the original." Pearce v. Manhattan

Ensemble Theater, Inc., No. 06 CV 1535(KMW), 2009 WL 3152127, at *8 (S.D.N.Y. Sept. 30,

2009) (citing Firth, 98 N.Y.2d at 371; Zoll v. Jordache Enters. Inc., 01 Civ. 1339, 2002 WL

31873461 (S.D.N.Y. Dec. 24, 2002)); see Comolli v. Huntington Learning Centers, Inc., 117 F.

Supp. 3d 343, 349 (S.D.N.Y. 2015) (the republication exception is applied "'where the

subsequent publication is intended to and actually reaches a new audience.'" (quoting Hoesten v.

19

Best, 34 A.D.3d 143, 821 (1st Dept. 2006)); Pearce, 2009 WL 3152127, at *8 n.7 (finding that defendants' conduct "constitutes republication because the [material] was intended to and did reach a new audience").

Here, Plaintiffs allege that "Defendants had engaged in active search engine optimization ('SEO') practices on websites such as Google and Bing" in order to ensure that the Article would appear high up on the list of internet search results when someone conducts an online search concerning Plaintiffs. (Cmplt. (Dkt. No. 2) ¶ 31) Plaintiffs further allege that Defendants used "meta tags" – "snippets of text that describe a [web]page's content but do not appear on the [web]page itself" – on the Quackwatch Website and in the Article to ensure that the Article would appear when anyone conducts certain searches related to Plaintiffs. (Id. ¶¶ 32-35) Plaintiffs claim that, as a result of these techniques, "the Article was read by a new audience, including individuals looking to do business with the [Plaintiffs]." (Id. ¶ 50; see also id. ¶ 48-49 ("[t]hese practices were intended to and actually caused the Article to . . . reach[] . . . new audiences")). Plaintiffs contend that these practices "constitute a republication of the [Article]" because they "demonstrate a clear intent to reach a new audience, and have succeeded in reaching a much greater audience than when the Article was first published." (Pltf. Br. (Dkt. No. 17) at 8)

Plaintiffs' republication contentions do not defeat Defendants' statute of limitations argument, because the Complaint does not contain any allegations as to when Defendants allegedly began using the search engine optimization techniques and metatags. Given that the Article was last revised on March 6, 2001 (Cmplt. (Dkt. No. 2) ¶¶ 25-26), Defendants' use of these techniques could have taken place at any point between March 6, 2001 and "early 2015," when Plaintiffs allege that they first discovered that Defendants were using

search engine optimization techniques and metatags. (Id. ¶ 36) Even assuming that the use of search engine optimization techniques and metatags could constitute a republication – an issue on which (1) the law is unclear and (2) this Court makes no ruling[9] – this theory does not salvage the Complaint, because Plaintiffs have not pled facts suggesting that Defendants engaged in such conduct within the one-year statute of limitations.[10] Accordingly, Plaintiffs' claims must be dismissed as time-barred.

## VIII.   LEAVE TO AMEND

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

---

[9] The law regarding republication in the context of Internet publications is unsettled. See Biro, 963 F. Supp. 2d at 267 ("It is well established that a new edition of a book or newspaper begins again the statute of limitations for a defamation claim. Less clear, however, is when it is appropriate to deem an internet publication 'republished' for purposes of restarting the statute of limitations period." (citations omitted)). Neither side has cited case law addressing the issue of whether the use of search optimization techniques and metatags constitutes republication.

The Third Circuit has noted that "courts addressing the [republication] doctrine in the context of Internet publications generally distinguish between linking, adding unrelated content, or making technical changes to an already published website (which they hold is not republication), and adding substantive material related to the allegedly defamatory material to an already published website (which they hold is republication)." In re Philadelphia Newspapers, LLC, 690 F.3d 161, 174 (3d Cir. 2012), as corrected (Oct. 25, 2012) (citing Davis v. Mitan (In re Davis), 347 B.R. 607, 611-12 (W.D. Ky. 2006)). While the conduct cited by Plaintiffs seems more akin to technical changes, this Court does not resolve the issue, because Plaintiffs have pled no facts suggesting that Defendants engaged in the alleged conduct within the limitations period.

[10] Defendants argue that "[t]he source code of the article . . . shows that there have been no newly-added meta-tags at all." (Def. Br. (Dkt. No. 14) at 10) In support of this assertion, Defendants have submitted the Article's source code. (Dkt. No. 15-7) Because the source code is not attached to the Complaint, incorporated into the Complaint by reference, or integral to the Complaint, it may not be considered in resolving Defendants' motion to dismiss.

opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'"
Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S.
178, 182 (1962)); see Murdaugh v. City of N.Y., No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2
(S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure
leave to amend complaints should be 'freely given,' leave to amend need not be granted where
the proposed amendment is futile." (citations omitted)).

Here, Plaintiffs' claims will be dismissed with leave to amend. "Where the
possibility exists that [a] defect can be cured," leave to amend "should normally be granted."
Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept.
10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253
(2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly]
pled," there is "a strong preference for allowing [a] plaintiff[] to amend." In re Bear Stearns
Companies, Inc. Sec., Derivative, & ERISA Litig., No. 07 CIV. 10453, 2011 WL 4072027, at *2
(S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).
Accordingly, Plaintiffs are granted leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk
of the Court is directed to terminate the motion (Dkt. No. 13). Any Amended Complaint will be
filed by September 23, 2016.

Dated: New York, New York
        August 24, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge