UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. ROBERT M. GOLDMAN AND DR.
RONALD KLATZ,
           Plaintiffs,

- against -

DR. STEPHEN J. BARRETT AND
QUACKWATCH, INC.,
           Defendants.

**ORDER**

15 Civ. 9223 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        In a September 4, 2018 Order, this Court granted Defendant Barrett's motion for sanctions pursuant to Fed. R. Civ. P. 11.[1] (See Order (Dkt. No. 57)) Barrett sought sanctions on the ground that there was an insufficient factual basis for certain claims Plaintiffs asserted in the Amended Complaint. (Def. Br. (Dkt. No. 50) at 6) This Court concluded that sanctions under Rule 11 were appropriate. (Order (Dkt. No. 57)) The Court directed the parties to submit supplemental briefs addressing "the issue of an appropriate financial sanction, and on whom such a sanction should be imposed." (Id. at 22)

        For the reasons stated below, the Court concludes that the appropriate sanction amount is $10,000, and that the sanction should be imposed upon Plaintiffs' counsel, Wesley Paul, jointly and severally with his law firm, Paul Law Group LLP.

## BACKGROUND

        Plaintiffs Goldman and Klatz each hold medical degrees from the Central America Health Sciences University School of Medicine, as well as osteopathic medical degrees.

---

[1] Defendant Barrett also sought sanctions pursuant to 28 U.S.C. § 1927; this Court concluded that a sanctions award under that statute was not appropriate. (See Order (Dkt. No. 57) at 22 n.6)

(Am. Cmplt. (Dkt. No. 26) ¶¶ 3, 6) They are co-founders of the American Academy of Anti-Aging Medicine, a "not-for-profit medical organization dedicated to the advancement of technology to detect, prevent, treat and research aging[-]related diseases." (Id. ¶12)

Defendant Barrett – a retired psychiatrist – owns and operates the website www.quackwatch.org (the "Quackwatch Website"). (Id. ¶¶ 17, 18) One stated objective of the Quackwatch Website is to identify medical practitioners who use what Barrett considers to be questionable medical practices. (Id. ¶ 19)

## I. PLAINTIFFS' PLEADINGS AND DEFENDANTS' MOTIONS TO DISMISS

On November 24, 2015, Plaintiffs initiated this action against Defendants Barrett and Quackwatch, Inc., asserting a number of claims arising from an article about Plaintiffs that Defendant Barrett posted on his website (the "Article"). (Cmplt. (Dkt. No. 2))[2] On August 24, 2016, this Court granted Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Order (Dkt. No. 23))[3]

On October 7, 2016, Plaintiffs filed the Amended Complaint. (Am. Cmplt. (Dkt. No. 26)) The Amended Complaint includes new factual allegations, including that "[o]n at least two separate occasions . . . Defendants deliberately and maliciously maligned [Plaintiffs]." (Id. ¶ 40) The Amended Complaint alleges that Chinese ministry officials conducting due diligence in connection with a proposed consulting agreement between the People's Republic of China and Plaintiffs contacted Defendants, and that Defendants told the officials that Plaintiffs (1) "had

---

[2] The causes of action alleged in the Complaint include defamation per se, defamation by implication, tortious interference with prospective economic advantage, conspiracy to tortiously interfere with prospective business relations, prima facie tort, civil conspiracy, and deceptive business practices under New York law. (Cmplt. (Dkt. No. 2) ¶¶ 43-94) The Complaint also sought injunctive relief. (Id. ¶¶ 95-100)

[3] Familiarity with the August 24, 2016 Order (Dkt. No. 23) is assumed.

2

violated numerous U.S. laws and they would likely be criminally prosecuted in the near future"; (2) "had tried to silence Dr. Barrett by using physical force and other intimidation tactics"; and (3) "were under further indictment by other countries for distributing drugs to foreign nations." As a result of the Chinese ministry officials' communications with Defendants, the proposed consulting agreement did not proceed. (Id. ¶¶ 50-52, 58)

The Amended Complaint further alleges that Plaintiffs and the Malaysian government entered into a "consulting arrangement," but that that project was terminated because "certain officials in the Malaysian government had discussions concerning the Article and the Defendants." (Id. ¶¶ 59, 61) The Amended Complaint asserts claims for defamation per se, tortious interference with prospective economic advantage, and conspiracy to tortiously interfere with prospective economic advantage. (Id. ¶¶ 63-86)

On November 29, 2016, Defendants moved to dismiss the Amended Complaint. Briefing on the motion was complete by December 20, 2016. (See Mot. (Dkt. No. 31); Def. Br. (Dkt. No. 32); Pltf. Opp. Br. (Dkt. No. 33); Def. Reply Br. (Dkt. No. 34)) On July 25, 2017, this Court dismissed the Amended Complaint, concluding that the defamation claim was time-barred and that the remaining claims were duplicative of the defamation claim. (See Order (Dkt. No. 38))[4] On August 24, 2017, Plaintiffs appealed that decision. (Notice of Appeal (Dkt. No. 44)) The Second Circuit affirmed this Court's order dismissing the Amended Complaint in a May 9, 2018 summary order. (Second Circuit Mandate (Dkt. No. 55))

On January 25, 2017 and February 6, 2017, while the motion to dismiss the Amended Complaint was pending, defense counsel Charles Michael informed Wesley Paul, Plaintiffs' counsel, that the new allegations in the Amended Complaint were false. Michael

---

[4] Familiarity with the July 25, 2017 order is likewise presumed.

3

warned Paul that Defendants would move for sanctions if Plaintiffs did not withdraw their claims. (Michael Decl., Ex. D (January 25, 2017 email) (Dkt. No. 51-4) at 2-3; Michael Decl., Ex. G (Feb. 6, 2017 email) (Dkt. No. 51-7) at 1-5)

## II.    DEFENDANT BARRETT'S SANCTIONS MOTION

On October 17, 2017, Barrett moved for sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. (See Mot. (Dkt. No. 49))[5]

Barrett argued that sanctions were warranted because "the claims in the Amended Complaint have no basis in fact, and . . . [Plaintiffs] refused to drop their claims in the face of evidence showing that their claims are untrue." (Def. Br. (Dkt. No. 50) at 6) Plaintiffs maintained, in their opposition brief, that the Amended Complaint's claims regarding Defendants' alleged contact with Chinese and Malaysian government officials were justified based on a "reasonable inquiry into the facts." (Pltf. Br. (Dkt. No. 45) at 14) Goldman and his counsel, Paul, also submitted declarations setting forth the basis for their allegations about Defendants' communications with Chinese and Malaysian officials.

According to Goldman, in mid-2014 Plaintiffs entered into a series of transactions in China and Malaysia to promote anti-aging clinics, workshops and centers, and entered into a joint venture agreement with Stephanie Kuo, a Chinese government official responsible for

---

[5] Fed. R. Civ. P. 11 provides that, "[b]y presenting to the court a pleading[,] . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Title 28, U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

4

"liasing with various government offices of the People's Republic of China." (Goldman Decl. (Dkt. No. 47) ¶ 9; Paul Decl. (Dkt. No. 46) ¶ 10; see also Paul Decl., Ex. A (Joint Venture Agmt.) (Dkt. No. 46-1)) Pursuant to the joint venture agreement, Kuo was appointed chairman of a newly-formed Chinese branch of the American Academy of Anti-Aging Medicine. (Paul Decl. (Dkt. No. 46) ¶ 14) Plaintiffs then began to submit applications for several franchises in China, which required government approval. In late 2015, however, Kuo informed Plaintiffs that their applications for franchises had been rejected. (Goldman Decl. (Dkt. No. 47) ¶¶ 10, 12)

In early 2016, Kuo informed Plaintiffs that "the likely reason for such rejections" was "concerns that resulted from the [Quackwatch] Article and communications that the government likely had with Dr. Barrett during diligence." Kuo stated that it was common for Chinese government officials to communicate with a wide array of people in conducting due diligence. (Goldman Decl. (Dkt. No. 47) ¶ 10) Goldman asked Paul to obtain additional information from Kuo about the rejections. (Id. ¶ 13; Paul Decl. (Dkt. No. 46) ¶ 21)

According to Goldman, discussions regarding a "consulting arrangement" in Malaysia also ended unexpectedly. Although "[n]o reason was given," Goldman believes that "the Article and Dr. Barrett's influence also similarly caused the cessation of these developments." (Goldman Decl. (Dkt. No. 47) ¶ 14)

Paul states that he communicated with Kuo "at various points in late 2015 and 2016" through a social media application. She informed Paul "of the facts relating to the termination of various joint venture license and permitting requests made in connection with the Joint Venture Agreement [in China] . . . which were generally described in the Amended Complaint." (Id. ¶¶ 21-22) Paul does not disclose the content of his communications with Kuo, nor does he state what "facts" Kuo reported to him. (See id.) Paul asserts, however, that he had

5

"no substantial reason to doubt" Kuo's statements – even though defense counsel provided Paul with telephone records showing that Barrett did not communicate with anyone in China or Malaysia during the relevant time period. (Id. ¶ 23; see also Barrett Decl. (Dkt. No. 52) ¶ 4) Paul further asserts that – in order to corroborate the information supplied by Kuo – the case "would need to proceed to the discovery stage and . . . information requests would need to comply with applicable international treaties (e.g., Hague Evidence Request)." (Paul Decl. (Dkt. No. 46) ¶ 24)

### III. THE COURT'S DECISION GRANTING SANCTIONS

On September 4, 2018, this Court granted Barrett's motion for sanctions pursuant to Fed. R. Civ. P. 11, finding that "[t]he record now before this Court . . . makes clear that there was no factual basis for the new allegations in the Amended Complaint." The "allegations . . . concerning Barrett's alleged contact with Chinese and Malaysian government officials were based on no more than speculation." (Order (Dkt. No. 57) at 20) Indeed, the claims in the Amended Complaint that Barrett had told Chinese government officials that Plaintiffs faced likely prosecution in the United States and abroad, and had threatened and intimidated Barrett, "appear to have been simply fabricated." (Id.) The Court concluded that "a reasonable attorney would have recognized that the new allegations . . . are frivolous, and run afoul of Rule 11(b)(3)." (Id. at 21)

The Court noted, however, that "Plaintiffs' failure to withdraw their claims did not result in substantial additional expense or delay, because Defendants' motion to dismiss the Amended Complaint was already fully briefed by the time that defense counsel notified Plaintiff[s'] counsel of Defendants' intent to seek sanctions." (Id. at 22 n.6) For the same reason, "[a]n award of all fees and costs expended in this action [is] not . . . consistent with Rule

6

11." (Id. at 22 n.7) The Court directed the parties "to brief the issue of an appropriate financial sanction, and on whom such a sanction should be imposed." (Id. at 22)

Defendant Barrett filed a supplemental brief on September 10, 2018, seeking sanctions in the amount of "$205,195 against plaintiffs and their counsel, jointly and severally." (Def. Supp. Br. (Dkt. No. 61) at 5) Plaintiffs filed a supplemental brief on September 27, 2018, contending that a monetary sanctions award is unwarranted. (Pltf. Br. (Dkt. No. 65) at 8)

## DISCUSSION

### I. LEGAL STANDARD

"If . . . the court determines that Rule 11(b) [of the Federal Rules of Civil Procedure] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Id. However, "a party represented by an attorney should not be sanctioned for papers signed by the attorney unless the party had actual knowledge that filing the paper constituted wrongful conduct, e.g., the paper made false statements or was filed for an improper purpose." Calloway v. Marvel Entm't Grp., 854 F.2d 1452, 1474 (2d Cir. 1988), rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120 (1989).

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The purpose of the imposition of sanctions, therefore, is deterrence, not compensation." Prim v. Peatco Ltd., L.P., No. 90 Civ. 7272 (LAP), 1995 WL 447648, at *3 (S.D.N.Y. July 27, 1995); see also Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley

7

Stream, 159 F.R.D. 391, 395 (E.D.N.Y. 1995) ("The central goal of Rule 11 sanctions is the deterrence of baseless filings and the curbing of abuses.").

Under Rule 11(c), "[t]he sanction may include[,] . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "District courts have broad discretion to determine a fee award based on the circumstances of a case." Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); E*Trade Fin. Corp. v. Deutsche Bank AG, 374 Fed. App'x 119, 124 (2d Cir. 2010)).

The 1993 Advisory Committee Note to Fed. R. Civ. P. 11 "sets forth certain factors that may be considered by the court when deciding . . . what sanctions are appropriate in the given circumstances." Colliton v. Cravath, Swaine & Moore LLP, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *12 (S.D.N.Y. Sept. 24, 2008), aff'd, 356 F. App'x 535 (2d Cir. 2009). These factors include:

> [1] [w]hether the improper conduct was willful, or negligent; [2] whether it was part of a pattern of activity, or an isolated event; [3] whether it infected the entire pleading, or only one particular count or defense; [4] whether the person has engaged in similar conduct in other litigation; [5] whether it was intended to injure; [6] what effect it had on the litigation process in time or expense; [7] whether the responsible person is trained in the law; [8] what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [9] what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11, Advisory Comm. Note to 1993 Amendments.

## II. ANALYSIS

### A. Parties to be Sanctioned

Barrett contends that any sanctions award should be levied "against the plaintiffs and their counsel, jointly and severally." (Def. Supp. Br. (Dkt. No. 61) at 5) According to Barrett, Paul "should clearly be . . . responsible . . . because, as counsel, he made the decision to sign and file the frivolous pleading." But "[t]he plaintiffs themselves should be jointly and severally liable, too, as they authorized making the frivolous allegations, and one of them even submitted a sworn declaration attempting to defend the frivolous filing." (Id. at 13-14)

Plaintiffs' counsel submits, however, that any monetary sanction should fall solely on counsel: "Plaintiffs, who are doctors, not lawyers, . . . relied on the facts relayed from Kuo, which seemed credible," and "relied on Paul to present their case within the proper bounds" of Rule 11. Accordingly, "[i]f Paul's assessment of [Rule 11] was in error, Plaintiffs should not bear the burden of a sanction." (Pltf. Supp. Br. (Dkt. No. 65) at 10)

The Court concludes that sanctions cannot properly be imposed on Goldman and Klatz. Plaintiffs may have "authorized making the frivolous allegations" in the Amended Complaint, and defended those allegations, but Barrett has not argued – much less demonstrated – that they had "actual knowledge that [the] filing . . . constituted wrongful conduct." Calloway, 854 F.2d at 1474. Moreover, Plaintiffs' counsel represents that Plaintiffs "relied on [him] to present their case within the proper bounds of the [Federal Rules of Civil Procedure]." (Pltf. Br. (Dkt. No. 65) at 10) Accordingly, Barrett's request that sanctions be imposed on Plaintiffs is denied.

A monetary sanction against Plaintiffs' counsel is appropriate, however. Paul filed an Amended Complaint containing vague and implausible allegations which he had to have

9

known were based on no more than speculation. When confronted with evidence suggesting that the claims were untrue – including telephone records showing that Barrett never called, or received a call, from China or Malaysia during the time period Plaintiffs had alleged (Michael Decl. (Dkt. No. 51) ¶¶ 10-11) – Paul refused to withdraw the claims. (Id., Ex. F (Feb. 6, 2017 email) (Dkt. No. 51-6) at 1) Paul's conduct calls for more than the mere "formal admonishment" Paul suggests. (Pltf. Supp. Br. (Dkt. No. 65) at 8) Accordingly, a financial sanction will be imposed on Paul. Because neither side suggests any "exceptional circumstances" excusing counsel's law firm from liability, counsel's firm – Paul Law Group LLP – will be jointly and severally liable with Paul for the award. Fed. R. Civ. P. 11(c)(1).

### B. Sanctions Amount

Defendant Barrett seeks sanctions in the amount of $205,195. (Def. Supp. Br. (Dkt. No. 61) at 5) Maintaining that the Amended Complaint "never should have been filed," Barrett requests "all of the defense fees and costs from the date the Amended Complaint was filed." (Id. at 9, 10) These fees and costs include the costs of briefing the motion to dismiss the Amended Complaint; the costs associated with Plaintiffs' appeal; and the costs of briefing the sanctions motion. (Id. at 5) Although defense counsel – attorneys at Steptoe & Johnson LLP – represented Defendants pro bono, counsel has calculated these costs by applying "the lowest hourly rates [counsel] can charge billable clients without getting management approval." (Michael Decl. (Dkt. No. 62) ¶ 3) For attorney Charles Michael, that rate is $775 per hour; for attorney Michael Keough, that rate is $610 per hour.[6] (Id., Ex. 1 (Summary of Fees) (Dkt. No. 62-1))

---

[6] The hourly rates for Project Assistants Pearl Parker, Charlotte Jenkins, and Bryan Hamerschlag – all of whom are listed on billing records submitted by Defendants – are $145, $155, and $155, respectively. (Michael Decl., Ex. 1 (Summary of Fees) (Dkt, No. 62-1))

10

Defense counsel's fees and expenses total $105,195: $23,942 for the motion to dismiss the Amended Complaint; $50,892 for the appeal; and $30,361 for the sanctions motion. (Id.) Barrett also "seek[s] a punitive sanction of an additional $100,000 as a deterrent for plaintiffs' litigation abuse." (Def. Supp. Br. (Dkt. No. 61) at 5)

Plaintiffs and their counsel argue that a monetary sanction is unwarranted, because they "relied on information they believed to be credible." (Pltf. Supp. Br. (Dkt. No. 65) at 8) Plaintiffs further argue that defense counsel's hourly rates are unreasonable; that counsel's time sheets "violate[] basic principles of fair billing practices"; and that the costs associated with the appeal should be exempt from any monetary award. (Id. at 12-13)

The Court concludes that an award along the lines Barrett proposes would be excessive, and far beyond "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); see Friedman v. Self Helf Cmty. Servs., Inc., No. 11-CV-3210(NGG)(JO), 2017 WL 663539, at *3 (E.D.N.Y. Feb. 17, 2017) ("[A]n award of the full amount of attorneys' fees and costs is not the proper measure of sanctions in this instance. To be sure, . . . . [plaintiff] did not have a good-faith basis for the various allegations and claims . . . that he asserted against the . . . defendants. . . . Despite this reprehensible behavior, the court's discretion is bound by the guidance that its sanctions must be limited to the amount necessary to prevent repetition of the offense." (internal quotation marks and citations omitted)).

Moreover, Barrett includes in his sanctions calculation certain categories of expenses that cannot properly be considered. For example, Barrett requests fees and other expenses associated with Plaintiffs' appeal. (Def. Supp. Br. (Dkt. No. 61) at 9-10) "On its face, Rule 11 does not apply to appellate proceedings," however. Cooter & Gell v. Hartmarx Corp.,

11

496 U.S. 384, 406 (1990). As the Supreme Court explained in Cooter & Gell, Rule 11 "must be interpreted in light of Federal Rule of Civil Procedure 1, which indicates that the Rules only 'govern the procedure in the United States district courts.'" Id. (quoting Fed. R. Civ. P. 1). Accordingly, Rule 11 should be understood to "permit[] an award only of those expenses directly caused by the filing, logically, those at the trial level." Id. at 407 (emphasis added). Accordingly, Barrett's appellate expenses cannot be considered in determining an appropriate amount of sanctions under Rule 11.[7]

---

[7] In Cooter & Gell, the appellate expenses at issue stemmed from an appeal of the district court's sanctions order, not from dismissal of a frivolous filing. Barrett relies on this distinction to argue that appellate costs can be considered in determining an appropriate sanction under Rule 11. Barrett argues that Cooter & Gell "addressed only the narrow issue of 'whether Rule 11 authorizes awards of attorney's fees incurred on appeal of a Rule 11 sanction'. . . . Here, Dr. Barrett does not seek fees for an appeal of a Rule 11 sanction – instead, Dr. Barrett seeks fees from an appeal of the order dismissing the Amended Complaint itself." (Def. Supp. Br. (Dkt. No. 61) at 10 n.2)

The Supreme Court's holding in Cooter & Gell was not "narrow," however. The Court began its analysis with the broad proposition that "[o]n its face, Rule 11 does not apply to appellate proceedings," and the Court concluded that Rule 11 should be understood to "permit[] an award only of those expenses . . . at the trial level." Id. at 406, 407 (emphasis added).

Moreover, the Federal Rules of Appellate Procedure offer an independent mechanism for imposing monetary penalties on parties bringing frivolous appeals: Fed. R. App. P. 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. As the Court explained in Cooter & Gell, Rule 38 "place[s] a natural limit on Rule 11's scope." Id. at 406; see also Brandt v. Schal Assocs., Inc., 131 F.R.D. 512, 517 (N.D. Ill. 1990) ("Where Schal Defendants were forced to go before the Court of Appeals only by reason of Campbell's effort to uphold the very filings in this Court that were themselves the basis for the Rule 11 violation, that activity might well be considered as so closely connected with the result and of such significance that the law is justified in imposing liability . . . under Rule 11 for those appellate services too. But on balance this Court finds that possibility is overridden by the literal breadth of the . . . Cooter & Gell language and by the important fact that our Court of Appeals had ample power to deal with the expenses incurred on appeal under its own rules. . . ." (internal quotation marks omitted)), aff'd, 960 F.2d 640 (7th Cir. 1992).

12

Under the circumstances of this case, the attorneys' fees and expenses associated with Defendants' motion to dismiss the Amended Complaint also cannot be considered in determining an appropriate Rule 11 sanctions amount. As the Court observed in its Order granting Barrett's sanctions motion, "[a]n award of all fees and costs expended in this action does not appear to be consistent with Rule 11," because "defense counsel did not put Plaintiffs on notice of Defendant Barrett's intent to seek sanctions until briefing was complete on Defendants' motion to dismiss the Amended Complaint." (Order (Dkt. No. 57) at 22 n.7) While Barrett no longer seeks "all fees and costs expended in this action," the expenses associated with briefing the motion to dismiss were all incurred prior to defense counsel's January 25, 2017 notice to Plaintiffs. Accordingly, the Court's sanctions award will not be premised in any fashion on these expenses.

Finally, as to the proposed $100,000 "punitive sanction," Barrett cites no authority from this Circuit that would permit such a sanction.[8] Moreover, the proffered basis for the additional $100,000 penalty – that "plaintiffs have tried similar tactics before" (Def. Supp. Br. (Dkt. No. 61) at 12) – does not support an enhanced sanctions award here, given that sanctions

---

[8] In support of his request for a "punitive sanction," Barrett relies on Estate of Calloway v. Marvel Entertainment Grp., 9 F.3d 237 (2d Cir. 1993), contending that in that case the Second Circuit "upheld a punitive sanction of $100,000 where a litigant claimed, without any factual basis, that a signature on a document damaging his case was a forgery." (Def. Supp. Br. (Dkt. No. 61) at 12) The $100,000 sanction in Estate of Calloway was not a "punitive sanction" imposed in addition to an award of attorneys' fees, however. Instead, the district court settled on the $100,000 sanction by first calculating the aggregate attorneys' fees the parties seeking sanctions had incurred – $900,000 – and then explaining that a much lower figure was warranted because "an award of the full amount of the attorneys' fees would be extremely onerous." Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp., 111 F.R.D. 637, 651 (S.D.N.Y.), amended, 650 F. Supp. 684 (S.D.N.Y. 1986), aff'd in part, vacated in part, 854 F.2d 1452 (2d Cir. 1988), rev'd in part sub nom. Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120 (1989).

13

will be imposed solely on Plaintiffs' counsel and, as discussed below, there is no evidence that counsel has engaged in the alleged "similar tactics."

The Court further concludes that an award consisting of only the fees and expenses associated with Barrett's sanctions motion – $30,000 – would nonetheless be excessive. As an initial matter, defense counsel has represented Defendants pro bono throughout these proceedings. (See Def. Supp. Br. (Dkt. No. 61) at 5, 11) Defendants have not expended funds on this litigation, and their counsel has had no expectation of payment.[9] Moreover, the Court accepts Plaintiffs' counsel's representation – which has been supported by declaration (see Sept. 17, 2019 Paul Decl.)) – that as a "sol[o] practitioner raising a family, paying a substantial sanction would work a financial hardship on [him] and his dependents," and that "[h]is financial position [has been] particularly difficult" recently. (Pltf. Supp. Br. (Dkt. No. 65) at 9; Sept. 17, 2019 Paul Decl. ¶ 5 ("Events unrelated to the matter before this Court[] have put [the Paul Law Group] and Mr. Paul in significant financial distress.")) Finally, the Court is mindful that "[t]he purpose of the imposition of sanctions . . . is deterrence, not compensation," Prim, 1995 WL

---

[9] Barrett asserts that the "[c]ase law is clear that the fact that counsel is working pro bono should not change the award." (Def. Supp. Br. (Dkt. No. 61) at 5) Case law is not "clear" on this question, however. Defendants cite to only one district court case – outside of this jurisdiction – for the proposition that "'[p]ro bono counsel is entitled to be compensated at market rates'" in connection with a sanctions award. (See id. at 11 (quoting Malede v. D.C. Jail Facility, 252 F.R.D. 63, 65 (D.D.C. 2008)) Malede did not involve Rule 11 sanctions, however. Instead, plaintiff in that case sought sanctions pursuant to Fed. R. Civ. P. 37(b) and (d), in connection with defendant's failure to designate a witness for deposition, and to appear for that deposition. (See Malede v. D.C. Jail Facility, No. 1:01-cv-298 (RWR) (Dkt. No. 158-1) at 5-6) Rule 37(b)(2)(C) requires a court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by" violations specified in Rule 37. Likewise, Rule 37(d)(3) directs courts to "require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by [a party's] failure" to, inter alia, attend the party's own deposition. Rule 11 includes no such mandatory sanctions.

447648, at *3, and believes that the goal of deterrence – both specific and general – can be accomplished with a sanctions amount much less than $30,000.

To be sure, the baseless nature of the allegations in the Amended Complaint "infected the entire pleading," see Fed. R. Civ. P. 11, Advisory Comm. Note to 1993 Amendments, and Plaintiffs' counsel – a person "trained in the law," id. – should have known better than to file a pleading premised on Kuo's uncorroborated speculation. Some monetary penalty is thus necessary to deter future frivolous filings. On the other hand, Barrett has not demonstrated that Paul's conduct – while clearly misguided – was "willful" or "intended to injure." (See Order (Dkt. No. 57) at 22 n.6 ("The Court cannot find . . . that Plaintiffs' counsel was motivated by improper purposes such as harassment or delay." (internal quotation marks and citation omitted)) Although Barrett argues that Plaintiffs Goldman and Klatz are "litigation bullies" who "have tried similar tactics before" (Def. Supp. Br. (Dkt. No. 61) at 12), there is no evidence that Paul's decisions with respect to the Amended Complaint were "part of a pattern of activity," or that Paul "has engaged in similar conduct in other litigation."

Having considered all of the circumstances, including Plaintiffs' counsel's financial condition, the Court concludes that a penalty of $10,000 "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## CONCLUSION

For the reasons stated above, and pursuant to Fed. R. Civ. P. 11, Wesley Paul – counsel for Plaintiffs – and his law firm, Paul Law Group LLP, are sanctioned in the amount of $10,000. Paul and Paul Law Group, LLP, will be jointly and severally liable for the sanction, and are ordered to pay the sum of $10,000 to Steptoe & Johnson, Defendant Barrett's counsel, by October 31, 2019.

15

The Clerk of Court is directed to terminate the motion (Dkt. No. 61) and close this case.

Dated: New York, New York
September 20, 2019

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge